**Robert L. ACKERLY, Appellant,**

v.

**Herbert L. LEY, Jr.**

**No. 22665.**

United States Court of Appeals District of Columbia Circuit.

Argued June 6, 1969.

Decided Dec. 19, 1969.

**1337**

McGOWAN, Circuit Judge:

Appellant's complaint in the District Court sought equitable relief, in the form of compelled disclosure of documents, against appellee Commissioner of Food and Drugs in the United States Department of Health, Education and Welfare. The District Court, on cross-motions for summary judgment, held for the Commissioner. Upon appeal from this judgment, it appears that subsequent events have rendered the litigation moot as to some of the documents sought. As to the remainder, which were inspected *in camera* by the District Court, we find the District Court's characterization of what that inspection revealed inadequate to admit of meaningful appellate review in terms of the relevant statutory standards. We thus vacate the judgment appealed from and remand for further proceedings consistent herewith.

I

The controversy before us involves the so-called Freedom of Information Act which was enacted by Congress, effective June 5, 1967. 5 U.S.C. § 552. Appellant is an attorney representing manufacturers and distributors of chemical products designed for household use. The Commissioner gave notice in the Federal Register of February 16, 1968, of a proposal on his part to bar from interstate commerce, as a "banned hazardous substance" within the purview of the Federal Hazardous Substances Act (15 U.S.C. § 1261 *et seq.*), carbon tetrachloride and mixtures containing it. 33 Fed.Reg. 3076. The notice recited that this proposed restriction was founded upon "information gathered from investigations and other sources" which suggested that "the degree or nature of the hazard involved" was such as to make no other course acceptable. Comments upon the proposal from all interested persons were invited to be submitted by March 16, 1968.

Appellant, by a letter dated March 6, 1968, sought permission "to review and inspect and/or copy all of the records" in the possession of the Commissioner

Mr. W. Stanfield Johnson, Washington, D. C., for appellant.

Mr. Leonard Schaitman, Atty., Department of Justice, with whom Messrs. Thomas A. Flannery, U. S. Atty., and Morton Hollander, Atty., Department of Justice, were on the brief, for appellee.

Before McGOWAN, LEVENTHAL and ROBB, Circuit Judges.

"which relate in any way to the degree or nature of the hazard" referred to in the Commissioner's proposal. In a reply of the same date, the Agency's Information Center Officer gave appellant a list of those materials relied upon by the Commissioner which had already been published. He refused the request otherwise as "too broad." "Also," he added, "this would, of necessity, include internal communications, which are exempt from disclosure under (the Freedom of Information Act)." The next day appellant appealed this decision to the Agency's Information Review Officer, who eventually supplied appellant with three memoranda from the Agency records [1] but denied access to all remaining records on the ground that they were "internal documents, such as the briefing memorandum to the Commissioner before the proposal was published, memoranda of telephone conversations, investigative reports, and material submitted to (the Agency) in confidence." These records, it was said, were "not subject to disclosure."

Appellant filed his complaint in the District Court on April 17, 1968.[2] On May 24, the Commissioner issued a final order implementing his proposal. That order was, however, stayed on July 27, 1968, and an evidentiary hearing by the Agency was scheduled on the merits of the order. This action was, as contemplated by the statute, in response to appellant's filing on June 20 of a formal objection to the order and his request for a public hearing, in which appellant entered an appearance for his clients.

An affidavit filed in the District Court by the Agency identified the items in its file as consisting, in addition to the three memoranda given to appellant on April 3, of the following:

> d. Briefing memorandum to the Commissioner of Food and Drugs regarding the declaration of carbon tetrachloride as a banned hazardous substance;

> e. Memoranda of telephone conversation between an employee of the United States Food and Drug Ad-

1. The reason for this disclosure was stated to be "solely because they would be available at any hearing which might occur." The three memoranda so made available were described as "copies of memoranda, one dated September 27, 1967, and the other undated, from the Bureau of Medicine respecting the medical basis for a proposed ban on carbon tetrachloride, and a third memorandum which requested the Bureau's comments." The remaining records requested were again characterized as "internal communications" which are "not routinely available to a party in litigation with the Agency."
 We note that, to the limited extent disclosure was made by this ruling in response to appellant's request, it occurred on April 3, 1968—some two weeks after the March 16 deadline fixed in the Commissioner's invitation for comments on his proposal, whereas appellant had stated in his letter of March 7 that the "only way that a responsive and relevant comment can be submitted (by March 16) is by permitting interested persons an opportunity to examine and evaluate evidence and data upon which this proposal is based." We are not impressed with this timing in terms of the Agency's

responsiveness to the Congressional purposes evident in both the Freedom of Information Act and the statutory procedural scheme for rule making by the Agency embodied in the Federal Food, Drug, and Cosmetics Act (21 U.S.C. § 371(e–g)). That scheme is described at length in our decision in Pharmaceutical Manufacturers Ass'n v. Gardner, 127 U.S.App.D.C. 103, 105–106, 381 F.2d 271, 273–274 (1967).

2. The Freedom of Information Act expressly contemplates District Court intervention to enforce its purposes. 5 U.S.C. § 552(a) (3) provides in part as follows:
 " * * * On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo and the burden is on the agency to sustain its action. * * * "

ministration and individuals in other agencies of the Federal Government respecting viewpoints and opinions regarding the danger of carbon tetrachloride;

f. Memoranda of telephone conversations between an employee of the United States Food and Drug Administration and Underwriter's Laboratory, Inc. staff members respecting the known or potential danger of carbon tetrachloride;

g. Report prepared by the Detroit District of the United States Food and Drug Administration on its investigation into a death reported due to inhalation of carbon tetrachloride, together with the various memoranda of interview written by the United States Food and Drug Administration Inspectors during the investigation, and medical records relating to the death gathered during that investigation and for purposes of the report;

h. Memorandum from the Office of Legislative Services to the Associate Commissioner for Compliance regarding carbon tetrachloride.

On November 25, 1968, in ruling for the Commissioner on the cross-motions for summary judgment, the District Court had only this to say:

The Court took the matter under advisement in order to inspect *in camera* the documents which the Government refused to produce. The inspection reveals that the documents which the Government refused to produce consist of internal memoranda based upon medical records which were secured by the Government in a confidential capacity, bolstered by reference to

published medical studies and reports which are equally available to the plaintiffs upon diligent research by them.

While this appeal was pending, the Commissioner, on May 8, 1969, moved (1) to dismiss as moot so much of it as related to what he denominated as "the factual information" sought by appellant, and (2) to affirm summarily with respect to the remaining items as presenting no substantial issue. This court ordered the motion to be heard simultaneously with the appeal on the merits.

## II

 We deal first with the motion. The claim of mootness derives from the circumstance that the public hearing on the Commissioner's banning order was scheduled to begin before an independent trial examiner on May 12, 1969. A prehearing conference was held on April 14 and 22, 1969, at which the Commissioner made a further disclosure to appellant of records previously characterized by him as "internal" and therefore not available. These are identified, in the concluding clause of subparagraph g of the affidavit quoted above, as "medical records relating to the death" which was the subject of the investigation and report referred to earlier in that subparagraph. The Commissioner thus appears to have relinquished the support given it by the District Court in this one respect, since these records were presumably among the documents inspected by it *in camera* and concluded by it to be " * * internal memoranda based upon medical records * * * " exempted from disclosure by the Freedom of Information Act.[3] Just how they differ from the

---

3. The belated making of the medical records available at the pretrial conference was explained on the ground that releases had been obtained by the Agency in respect of the confidential matter contained in them. The District Court's reference is ambiguous since it refers to "internal memoranda based upon medical records which were secured by the Gov-

ernment in a confidential capacity," and therefore does not distinguish clearly between the reports and the medical records on which they are "based." In any event, it denied relief to appellant in respect of both. Exemption (6) of the Act covers " * * * medical files * * * the disclosure of which would constitute a clearly unwarranted invasion of per-

other documents with which they are lumped in subparagraph g of the affidavit is not apparent from the record before us. In any event, we think the lawsuit has lost its substance as to this item, since the only specific relief appellant seeks is compelled disclosure and that has been rendered moot by the disclosure in this instance which has now actually been made.[4]

Again, however (see note 1 supra), we confess to a considerable lack of enthusiasm for the caliber of the Commissioner's performance in this seemingly erratic discharge of his responsibilities under the Freedom of Information Act. The records in question, which appellant sought in order to prepare his comments on the Commissioner's proposal in its preliminary stage, were made available to him at long last in connection with the evidentiary hearing which it was the purpose of Congress, in the two-stage rule making prescribed by it, to render possibly unnecessary by common consent. This hardly comports with the vigorous defense of the two-stage device which the Agency pressed—successfully —upon this court in Pharmaceutical Manufacturers Ass'n v. Gardner, note 1 supra. It is certainly not the kind of administrative performance envisaged by Congress in the Freedom of Information Act.[5]

### III

■■■ We address ourselves next to that part of the appeal as to which the parties continue in an adversary posture. The Commissioner takes his stand upon the exemptive provisions of the Freedom of Information Act. 5 U.S.C. § 552(b). In particular, he relies upon the Congressional direction that the Act "does not apply to matters that are

\* \* \* \* \* \*

"(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;"

\* \* \* \* \* \*

He asserts that this specific exemption was intended by Congress to embody the familiar doctrine that the Executive branch is privileged not to disclose "intra-governmental documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions are formulated"—language which we approved in our affirmance of the District Court in V. E. B. Carl Zeiss Jena v. Clark, 128 U.S.App.D.C. 10, 384 F.2d 979 (1967), cert. denied, 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361.[6] See also Boeing Airplane v. Coggeshall, 108 U.S. App.D.C. 106, 280 F.2d 654 (1960); Machin v. Zuckert, 114 U.S.App.D.C. 335, 316 F.2d 336 (1963), cert. denied, 375 U.S. 896, 84 S.Ct. 172, 11 L.Ed.2d 124 (1963); and Freeman v. Seligson, 132 U.S.App.D.C. 56, 405 F.2d 1326 (1968).

The last of these cases was decided after the enactment of the Freedom of

---

sonal privacy." Where a purely medical file is withheld under the authority of Exemption (6), it will be for the District Court ultimately to determine any dispute as to whether that exemption was properly invoked. It will obviously not be enough for the agency to assert simply that it received the file under a pledge of confidentiality to the one who supplied it. Undertakings of that nature can not, in and of themselves, override the Act.

4. This court's disallowance of a mootness claim in the Freedom of Information Act suit involved in American Mail Line, Ltd. v. Gulick, 133 U.S.App.D.C. 382, 411

F.2d 696 (1969), is not to the contrary. There it was urged that appellant's needs had been met, not by giving him the document he had asked for but by the publication of an agency opinion. Here appellant has been given the very medical records he requested.

5. We grant the motion for mootness only insofar as it relates to the medical records disclosed at the prehearing conference. Summary affirmance as to the other items in controversy is, for the reasons hereinafter appearing, denied.

6. The District Court opinion appears at 40 F.R.D. 318, 324 (1966).

Information Act, and we took occasion in it to say that the classification we had repeatedly recognized for privilege purposes had been "fortified by a clear expression of congressional policy to hold the line on disclosure of materials of this sort," citing Exemption (5) of the Freedom of Information Act and its underlying legislative history. 405 F.2d at 1339 n. 70. That history, looked at in more detail,[7] only confirms the view of it expressed by us in *Seligson*, and we accept the Commissioner's contention that the Congress intended that Exemption (5) was to reflect the privilege, customarily enjoyed by the Government in its litigations, against having to reveal those internal working papers in which opinions are expressed and policies formulated and recommended.

The basis of Exemption (5), as of the privilege which antedated it, is the free and uninhibited exchange and communication of opinions, ideas, and points of view—a process as essential to the wise functioning of a big government as it is to any organized human effort. In the Federal Establishment, as in General Motors or any other hierarchical giant, there are enough incentives as it is for playing it safe and listing with the wind; Congress clearly did not propose to add to them the threat of cross-examination in a public tribunal.

The problem is not the essential soundness of this policy but the inevitable temptation of a governmental litigant to give it an expansive interpretation in relation to the particular records in issue. The courts have, however, been dealing with this problem since long before the Freedom of Information Act was passed, and they can bring to the administration of the exemptions of that statute the common sense by which they have had to measure claims of executive privilege.

Our difficulty at this point resides in the fact that it was the District Court, and not this court, which examined the disputed records *in camera*; and we cannot tell from its abbreviated and tangential comments whether its decisional approach was adequately rooted in the legislative policies underlying the exemption. The result it reached is illuminated only by a statement that it found the controverted records to be "internal records based upon medical records which were secured by the Government in a confidential capacity, bolstered by reference to published medical studies and reports which are equally available to the plaintiffs [sic] upon diligent research by them." There is no reference whatsoever to any one of the statutorily enumerated exemptions, including Exemption (5) primarily relied upon by the Commissioner here.[8] The Commissioner

7. *See e. g.*, S.Rep. No. 1219, 88th Cong., 2d Sess., 13–14:

> Exception No. 5 would exempt "intraagency or interagency memoranda or letters dealing solely with matters of law or policy." This exemption was made upon the strong urging of virtually every Government agency. It is their contention, and one that the committee believes has merit, that there are certain governmental processes relating to legal and policy matters which cannot be carried out efficiently if they must be carried out "in a goldfish bowl." Government officials would be most hesitant to give their frank and conscientious opinion on legal and policy matters to their superiors and co-workers if they knew that, at any future date, their opinions of the moment would be spread on the public record. The Committee is of

> the opinion that the Government cannot operate effectively or honestly under such circumstances. Exception No. 5 has been included to cover this situation, and it will be noted that there is no exemption for matters of a factual nature.

8. In its brief in this court, appellee makes some incidental references to Exemption (7) as applicable with respect to at least some of the disputed records, but it purports to find no need to press the matter since it believes Exemption (5) to be determinative as to all. Since the District Court made no express reference to any of the exemptions, we do not know how much, if at all, Exemption (7) figured in the result it reached. Exemption (7) relates to "investigatory files compiled for law enforcement purposes except to the extent available by law to a party other than an agency."

**1342**

has himself, however, abandoned any claim that the medical nature of the records alone qualifies them for exemption. And the fact that appellant might, presumably by a combination of intuition and diligent research, ferret out some of the materials relied upon is surely no reason to suppose that Congress made revelation under the Freedom of Information Act contingent upon a showing of exhaustion of one's own ingenuity.

We do not have, in sum, the kind of a District Court ruling susceptible of an appellate review which would generate confidence in either a reversal or an affirmance. The fuller discussion we require would include a more detailed identification of the nature of the documents in question, and a greater exposure of the reasons why the particular documents were regarded as exempted from disclosure. As hereinabove stated, we vacate the judgment below and remand the case for further consideration by the District Court in the light hereof.

It is so ordered.