**Paul B. OWENS, Plaintiff,**

v.

**U. S. BUREAU OF PRISONS**
and
**William B. Saxbe, Defendants.**

**Civ. A. No. 74-78.**

United States District Court,
District of Columbia.

June 12, 1974.

Larry P. Ellsworth and Alan B. Morrison, Washington, D. C., for plaintiff.

Earl J. Silbert, U. S. Atty., Arnold T. Aikens, and Robert Werdig, Jr., Asst. U. S. Attys., U. S. Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION

WADDY, District Judge.

This action, arising under the Freedom of Information Act (FOIA), 5 U.S. C. § 552, is before the Court on the parties' cross-motions for summary judgment. The facts material to disposition of these motions are as follows. Plaintiff Paul B. Owens is presently an inmate in the United States penitentiary at Marion, Illinois, having been transferred from the federal penitentiary at Lewisburg, Pennsylvania on September 21, 1973. The transfer had been effected pursuant to the request of the Warden of the Lewisburg facility. In a letter dated October 10, 1973, plaintiff advised the Director of the Bureau of Prisons (BOP) that he wished to object to the summary transfer procedures employed in his removal to Marion, arguing that the prison action was arbitrary, capricious and an abuse of discretion. Plaintiff also complained that as a result of his removal he was being deprived of inmate privileges to which he had become entitled while incarcerated in Lewisburg. Expressing a desire to challenge the BOP action in the courts, plaintiff requested access to various prison records which he claimed were pertinent to his transfer and which would assist him in the preparation of his proposed judicial action. The six

categories of documents which plaintiff requested are:

1. Prison progress and work reports;
2. Housing reports;
3. The written request by the Warden of the Lewisburg penitentiary for BOP's approval of the transfer;
4. The written report stating the reasons for the transfer;
5. Any other documents involved in approval of the transfer, including the names and addresses of officials giving such approval;
6. All documents in plaintiff's prison files relating to any legal action filed by plaintiff in the United States District Court for the Middle District of Pennsylvania.

After the Department of Justice failed to respond to plaintiff's request,[1] a series of communications between plaintiff's counsel and officials of BOP ensued. On December 6, 1973 plaintiff's counsel informed BOP that the failure to respond to plaintiff's inquiry would be considered a denial of the request. The instant action was filed on January 16, 1974. Defendants are the Bureau of Prisons and Attorney General William B. Saxbe.

On January 14, 1974[2] the Director of BOP advised plaintiff that 92 pages of requested documents would be released, but that the following items would not be disclosed:

1. Work report;
2. Housing report;
3. That portion of a special progress report containing staff evaluation of plaintiff's conduct as a prisoner.

Non-disclosure was justified on the grounds that: "[t]hese reports consist of staff analysis and comment and due to the need to maintain open and frank communication between staff they must not be subject to publicity." The Director further advised that, except for a "TRANSFER AUTHORITY" which was provided, no documents existed in the categories numbered 3, 4 and 5 in plaintiff's request letter.[3]

On March 22, 1974, defendants filed their motion for summary judgment.[4]

In a subsequent memorandum, defendants explained, in general terms, the nature of the information contained in the documents which were being withheld:[5]

1. Work report: the officer in charge of the prison industry in which

---

1. See 28 C.F.R. § 16.5, 38 Fed.Reg. 4392 (Feb. 14, 1973), requiring the Justice Department to either grant or deny a request for documents within 10 days of receipt of the request, or to state why additional time is needed to respond.

2. The letter to Owens was dated December 17, 1973, but apparently was not mailed until a later date. Plaintiff's attorney did not receive a copy of the letter until January 17, 1974, the day after the filing of this action.

3. Plaintiff originally had contested the assertion that these documents did not exist, but provided no factual basis for contradicting defendants' representation. Plaintiff had also suggested that notes of the telephone conversations between the Warden of the Lewisburg penitentiary and the Assistant Warden of the Marion prison, arranging for the transfer, might be extant and would be subject to disclosure. At the hearing on the cross-motions for summary judgment the Court heard testimony by Mr. Harold Crockett, of the General Counsel's Office of BOP,

to the effect that in his review of Mr. Owens' prison file no documents or records relating to plaintiff's transfer were found other than those already produced, and that there were no notes recording the contents of telephonic communications between prison officials. Based on Mr. Crockett's testimony plaintiff withdrew his claim as to these alleged documents. The Court has also concluded from this testimony that the documents in question do not, in fact, exist.

4. Defendants filed their motion for summary judgment with exhibits, but without supporting affidavits; this remains defendants sole response to the complaint. For purposes of the present disposition of this case, the Court will treat the March 22 motion as both a motion to dismiss for failure to state a claim, pursuant to Rule 12, and a motion for summary judgment, pursuant to Rule 56.

5. This memorandum (dated April 30, 1974) was the outgrowth of a series of discovery maneuvers engaged in between the parties. Plaintiff had filed with his complaint a mo-

**550**

the inmate is employed evaluates the work of that inmate, including consideration of his "Industry, Interest, Accuracy of work performance, care of tools and equipment, aptitude and ability to do the job, personal appearance, progress on job, tell of any outstanding achievements and particularly explain any poor ratings." The officer also is to rate the inmate according to a prescribed rating system and to make recommendations as to reduction in custody and the accumulation of good time.

2. Housing Report: akin to the work report in scope. In response to request, an officer, presumably familiar with the inmate's cell assignment, gives to the Classification Committee his opinion relative to the inmate's reactions, responses and relationships to supervision, regulations and other inmates, and gives a rating of personal habits and a recommendation for certain dormitory housing.

3. Progress Report: the portion deleted is an "EVALUATION OF RELEASE READINESS" with two subheadings of "Probable Community Adjustment" and "Recommendation."

After receiving the foregoing explanation plaintiff filed a cross motion for summary judgment. The Court having considered these motions and the supporting memoranda and exhibits, along with the oral argument of counsel and the entire record herein, and the Court further having inspected *in camera* the

documents in question, finds that there is no genuine issue as to the material facts involved in plaintiff's claim, as those facts have been set forth above. The Court concludes that judgment should be entered as a matter of law in favor of defendants, and that plaintiff's motion for summary judgment should be denied and the complaint dismissed.

### LAW

Defendants rely solely on exemption (5) of the FOIA to support the non-disclosure of the documents in question:[6]

(b) This section does not apply to matters that are—

(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.

■■■ Congress' intent in devising this exception to the general rule of disclosure was to protect those internal processes by which agency personnel are able to generate and formulate the decisions and policies which are essential to the effective operation of government. S.Rep.No.813, 89th Cong., 1st Sess. (1965); EPA v. Mink, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973); Bristol-Myers Co. v. F.T.C., 138 U.S.App. D.C. 22, 424 F.2d 935 (1970); Ackerley v. Ley, 137 U.S.App.D.C. 133, 420 F.2d 1336 (1969). When an agency is charged with the promulgation of official policy or the rendering of adminis-

---

tion requesting defendants to provide a detailed justification for exempting specific documents from disclosure, including an itemization and index of these documents. See Vaughn v. Rosen, 157 U.S.App.D.C. 340, 484 F.2d 820 (1973), cert. denied, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). The motion was not opposed by defendants and was granted by Order of the Court dated February 13, 1974; when defendants failed to comply, a second Order was entered on April 8, 1974, directing submission of the information. However, it was not until plaintiff moved to impose sanctions pursuant to

Rule 37 of the Federal Rules of Civil Procedure that defendants finally submitted the required information in its memorandum of April 30.

6. In the hearing on cross-motions for summary judgment counsel for defendants specifically disclaimed the applicability of exemptions (6) and (7) to the facts of this case. Inasmuch as the Court rules in the favor of defendants on the basis of exemption (5), this disclaimer makes it unnecessary to pursue the possible relevance of these other exemptions.

trative decisions, the "predecisional" deliberations of agency officials are immune from public scrutiny, even though the final agency action may be a matter of public record. Grumman Aircraft Engineering Corp. v. Renegotiation Board, 157 U.S.App.D.C. 121, 482 F.2d 710 (1973). The heart of the exemption is the recognized need to promote the "free and uninhibited exchange and communication of opinions, ideas, and points of view . . ." among persons involved in these agency deliberations. Ackerly v. Ley, *supra*, 420 F.2d at 1341; Wu v. National Endowment For Humanities, 460 F.2d 1030 (5th Cir.1972), cert. denied, 410 U.S. 926, 93 S.Ct. 1352, 35 L.Ed.2d 586 (1973).

In applying this rule to each case, the courts have been guided by a general standard which distinguishes between purely factual material, which is disclosable, and those documents which need not be divulged because they contain or reflect the deliberations, recommendations, evaluations, etc. of agency officials. EPA v. Mink, *supra*; Soucie v. David, 145 U.S.App.D.C. 144, 448 F.2d 1067 (1972); Wu v. National Endowment For Humanities, *supra*. This factual/deliberative test was recently reexamined and, to some extent, refined by the United States Court of Appeals for the District of Columbia in Montrose Chemical Corporation of California v. Train, 491 F.2d 63 (D.C.Cir.1974). The interpretation of exemption (5) adopted by the Court therein fully controls the issue raised in the instant action.

Plaintiff in *Montrose* had sought disclosure of staff summaries and analyses of factual evidence adduced at a public hearing before the Environmental Pro-

tection Agency; the Administrator of EPA utilized these summaries in preparing his final order in the administrative proceeding. Although these staff memoranda incorporated wholly factual material already available to plaintiff in the public record of the hearing, the documents were nevertheless held to be exempt from disclosure on the ground that the "consultative functions" of the agency officials must be protected. The Court stated:

> Our solution rests on the interpretation of the purpose of exemption 5. If the exemption is intended to protect only deliberative *materials* then a factual summary of evidence on the record would not be exempt from disclosure. But if the exemption is to be interpreted to protect the agency's *deliberative process*, then a factual summary prepared to aid an administrator in resolution of a difficult, complex question would be within the scope of the exemption.[7]

█ The BOP records at issue in the instant case fall within the guidelines of *Montrose* and, perhaps, present an even stronger argument for non-disclosure. The purely factual materials which might be relevant to plaintiff's inquiry are apparently among the 92 pages of documents already released. The three categories of material not disclosed clearly represent an assessment of those facts by agency officials and recommendations as to future actions which BOP may wish to take with respect to plaintiff. Contrary to plaintiff's assertion, these documents are not the final products of the prison's decision-making process.[8] Rather, like the staff summa-

---

7. Emphasis in original.

8. Plaintiff's argument that this information would be automatically available to him through discovery in a judicial proceeding which he might bring against BOP is also unavailing. The need to protect the consultative functions of governmental agencies has long been recognized and certainly ante-

dates the FOIA. See, e. g., Kaiser Aluminum & Chemical Corp. v. United States, 157 F.Supp. 939, 141 Ct.Cl. 38 (1958). The factual/deliberative test employed in FOIA cases represents a restatement of the traditional standards applied by the courts whenever discovery disputes have arisen in litigation involving an agency. See EPA v. Mink, 410 U.S. 73, 91, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973).

ries involved in the *Montrose* case, the prison officials' evaluations and recommendations in the work, housing and progress reports are utilized by supervisory prison personnel in making a variety of decisions regarding an inmate, including, for example, the determination whether to grant or deny an application for parole.

The Court does not wish to suggest to prison officials that this opinion accords them a blanket protection from the disclosure provisions of the FOIA. Most records which reflect an inmate's activities would, in all likelihood, fall within the category of "purely factual" materials which must be disclosed.[9] Final decisions or policy formulations may also be accessible to public view. See Grumman Aircraft Engineering Corp. v. Renegotiation Board, *supra.* Defendants impliedly recognize this fact by virtue of their release of most of Mr. Owens' records. However, the Court agrees with defendants that those limited documents, or portions thereof, which have been prepared by prison staff for evaluation purposes are not disclosable. They are an integral part of the deliberative processes employed by BOP in its supervision of inmates. Disclosure of these records could seriously hamper the free flow of ideas between prison officials whose opinions are necessary to the effective operation of the federal penal system.

For the above reasons the Court has concluded that plaintiff is not entitled to the documents in question and judgment has been entered for defendants.[10]

The cases cited by plaintiff, which purportedly support the view that documents such as the ones sought by Owens are discoverable, are not on point. They either do not address themselves to the issue of government privilege in the face of a request for documents, Pence v. Tobriner, 121 U.S.App. D.C. 282, 349 F.2d 717 (1965); Fitzgerald v. Hampton, 152 U.S.App.D.C. 1, 467 F.2d 755 (1972), or suggest the disclosure of agency information in entirely different factual contexts, Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 91 S.Ct. 814,

28 L.Ed.2d 136 (1971); Black v. Sheraton Corp. of America, 371 F.Supp. 97 (D.D.C. 1974).

9. Subject, perhaps, only to the limitations of exemption (6) of the Act. See H.Rep.No. 1497, 89th Cong., 2d Sess. 11 (1966).

10. Order denying plaintiff's motion for summary judgment and granting defendants' motion for summary judgment was entered June 10, 1974.