Douglas L. TEICH, M.D., Plaintiff,

v.

FOOD AND DRUG ADMINISTRATION, et al., Defendants,

and

Dow Corning Corporation, Intervenor–Defendant and Cross–Claim Defendant.

Civ. A. No. 89–0391.

United States District Court, District of Columbia.

Nov. 27, 1990.

Suzanne S. La Pierre, Los Angeles, Cal., Eleanor H. Smith, Alan B. Morrison, Washington, D.C., Public Citizen Litigation Group, for plaintiff.

Melanie Ann Pustay, Washington, D.C., Office of Information and Privacy, U.S. Dept. of Justice, for defendant FDA.

Burt Braverman, Cole, Raywid & Braverman, Washington, D.C., Edward M. Basile, King & Spalding, Atlanta, Ga., for intervenor-defendant Dow Corning.

## MEMORANDUM OPINION

SPORKIN, District Judge.

On October 17, 1990, this case came before the Court on cross-motions for summary judgment of plaintiff Douglas L. Teich's FOIA request for certain information concerning silicone gel breast implants submitted to defendant, the Food and Drug Administration ("FDA"), by Dow Corning Corporation ("Dow Corning"), the intervenor-defendant in this action.

Plaintiff has made a FOIA request for a series of animal studies as well as for a summary of consumer complaints about Dow Corning's breast implants. The FDA contends that the animal studies are privileged from disclosure under exemption 4 to the FOIA, 5 U.S.C. § 552(b)(4), as "confidential commercial information." Although the FDA takes no position on the release of the complaint summary, Dow Corning resists its production because it contends that the complaint summary is privileged from disclosure under the FDA's presubmission review procedure, 21 C.F.R. § 20.44. Because this Court concludes that the FDA's presubmission review regulation violates the FOIA and is therefore invalid, and because this Court further finds that neither the animal studies nor the complaint summary are exempt from disclosure, summary judgment will be entered for the plaintiff.

*Background:*

Dow Corning has manufactured and sold silicone gel breast implants since the 1960's. Although there are other competitors in this market, Dow Corning is the major supplier of these devices. Over 2,000,000 women currently have silicone gel breast implants, and this number is rapidly increasing. In 1988 alone, 130,000 of these prostheses were implanted. The

FDA estimates that only 15% of these implants were undertaken for reconstructive purposes following a mastectomy, while the other 85% were done solely for cosmetic reasons.

In early 1987, Dow Corning became aware of certain adverse results from an ongoing study involving rats implanted with a formulation of Dow Corning silicone gel. The study revealed an increased incidence of fibrosarcomas at the implant site. Although these results did not necessarily indicate that the implants posed a danger to humans, Dow Corning decided to assemble an expert panel to study the risks. The panel concluded there was no indication of risk to human health. However, Dow Corning decided that it should share this information with the FDA. Consequently, on August 5, 1987, Dow Corning volunteered this study to the FDA.

As a result of this information, the FDA decided to convene a meeting of its General and Plastic Surgery Devices Advisory Panel on November 22, 1988. The FDA intended to use the information presented during the panel meetings to inform the agency in connection with its rulemaking procedure concerning silicone gel breast implant safety testing.

On November 23, 1988, the FDA panel wrote to Dow Corning requesting silicone gel breast implant research data.[1] Dow Corning undertook and funded a number of animal studies in the 1960's and early 1970's. The test results were submitted by Dow Corning to the FDA in support of Dow Corning's new drug application for injectable silicone products.[2] In 1988, the panel was unable to locate these studies due to agency reorganizations that had occurred during the intervening years. The panel therefore requested that Dow resubmit the information to the FDA within 30 days. On January 9 and 25, 1989, Dow Corning submitted over 5,000 pages of research data, including a resubmission of the earlier studies as well as a number of later studies.

In addition to the animal studies, Dow Corning was requested to and did furnish the FDA with a summary of the complaints it had received from consumers of its silicone gel breast implants. This compilation contained the complaints received by Dow Corning concerning its breast implants during the years 1984 through 1988. The complaint summary was compiled by the company in response to a specific request by the FDA as part of the 1988 panel investigation.

All the information was submitted to the FDA pursuant to the agency's presubmission review regulation, 21 C.F.R. § 20.44. This regulation provides for information submitted to the agency to be held "confidentially and separately," and specifically states that the information "is not received as part of FDA's files" pending determination whether part or all of the information would be exempt from mandatory disclosure pursuant to an FOIA request. 21 C.F.R. § 20.44(b), (c). In the event that the FDA concludes that some or all of the information could not be protected under an exemption to the FOIA, the regulation accords the person seeking presubmission review discretion to withdraw the information. If withdrawn, no copies or summaries of the information are to be retained by the FDA. *Id.* § 20.44(d).

In this case, the FDA concluded that while the animal studies could be protected from disclosure under the FOIA, Dow Corning's complaint summary would be subject to mandatory disclosure. Thus, under the presubmission review regulation, Dow Corning could and did request to withdraw the complaint summary. With the filing of this lawsuit, however, the FDA

---

1. In January 1989, FDA sent a separate letter to all manufacturers of silicone breast implants seeking information for the panel investigation. It is plaintiff's representation that no information was obtained from companies other than Dow Corning. Accordingly, the FOIA request at issue in this case covers only Dow Corning's submissions.

2. Prior to the 1976 enactment of the Medical Device Amendments to the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §§ 360c–360k, these silicone products were classified as drugs for purposes of FDA regulation.

decided it would not return the document to Dow Corning in order to preserve the status quo. Contrary to the provisions of the presubmission review regulation, the complaint summary found its way into the FDA's unrestricted files and was used by the staff in preparation for a proposed inspection of Dow Corning's manufacturing facilities.

Plaintiff's January 27, 1989, FOIA request to the FDA involved two categories of documents: (1) the animal studies and associated correspondence; and (2) the complaint summary.[3] By letter dated March 17, 1989, the FDA rejected plaintiff's first request, stating that the animal study records were privileged under exemption 4 of the FOIA. The FDA also denied plaintiff access to the complaint summary on the grounds that it was not an agency record under its presubmission review regulation.[4]

Later, the FDA informed the Court that the complaint summary had been used by the agency and that it had therefore become an "agency record" which could no longer be protected by its presubmission review regulation or by any exemption to the FOIA. Under these circumstances, the FDA stated that it would no longer deny access to the complaint summary and would leave the ultimate decision up to the Court. Because Dow Corning disagreed with the FDA's decision, the company has intervened to prevent the agency from turning the complaint summary over to plaintiff.

### Presubmission Review

■ The Court cannot uphold the validity of the FDA's presubmission review regulation, 21 C.F.R. § 20.44, as applied to Dow Corning's submission of the complaint summary. If the FDA were permitted to assure confidentiality to those it regulates as spelled out in the presubmission review

regulation, the FOIA would be completely frustrated. As counsel for the FDA conceded in oral argument, the presubmission review procedure was adopted specifically to avoid public disclosure of information as required by the FOIA.

This is clearly an attempt by the agency to nullify a congressionally enacted law. While certainly the agency can deny access to records that the FOIA itself protects, its presubmission review cannot be used to forge a Northwest passage around the FOIA:

It will be for the District Court ultimately to determine any dispute as to whether [an] exemption was properly invoked. It will obviously not be enough for the agency to assert simply that it received the file under a pledge of confidentiality to the one who supplied it. Undertakings of this nature can not, in and of themselves, override the Act.

*Ackerly v. Ley*, 420 F.2d 1336, 1339–40 n. 3 (D.C.Cir.1969).

■ This Court rejects the FDA's attempt to override the FOIA by promising its regulatees that under its presubmission review policy, the agency will return those documents it determines are not entitled to protection under the FOIA without those documents becoming "agency records" subject to FOIA disclosure. The argument that Dow Corning's complaint summary was at no time an agency record is untenable. Even if the regulation could validly protect the complaint summary, the FDA now concedes that it failed to follow the precise terms of its own regulations since it made substantive use of the document. This alone made the complaint summary an agency record.

■ Had the FDA not used the complaint summary, however, the Court's conclusion would have been the same, because

---

3. Plaintiff's FOIA request was made on behalf of Public Citizen Health Research Group, a nonprofit organization engaged in research and consumer advocacy on health and safety issues.

4. This action was filed on February 14, 1989, on the grounds that the FDA had not responded to plaintiff's request within 10 working days. Plaintiff later sought a temporary injunction

restraining the FDA from returning the complaint summary to Dow Corning pursuant to its presubmission review regulation. This motion was withdrawn when the FDA agreed to keep the complaint summary pending resolution of this action. Accordingly, FDA retains the complaint summary.

once filed with the FDA, the document became an agency record. The determination whether a document is an "agency record" is not one left to the agency's determination. A record is an agency record if the agency "either create[s] or obtain[s]" the document. *U.S. Dept. of Justice v. Tax Analysts*, 492 U.S. 136, 109 S.Ct. 2841, at 2847, 106 L.Ed.2d 112 (1989). Furthermore, "the agency must be in control of the requested materials at the time the FOIA request is made." *Id.*, 109 S.Ct. at 2848. The Supreme Court has defined documents over which the agency has control as "materials [which] have come into the agency's possession in the legitimate conduct of its official duties." *Id.*

The FDA came to possess the complaint summary in the "legitimate conduct of its official duties." Even if the FDA does not recognize its authority to compel submission of documents from Dow Corning, the voluntary submission process is certainly part of its legitimate duties. These legitimate duties include anything done " 'under Federal law or in connection with the transaction of public business.' " *Tax Analysts*, 109 S.Ct. at 2848 (quoting the Records Disposal Act, 44 U.S.C. § 3301). The FDA's panel, in requesting submission of documents from Dow Corning, was transacting the public business which is its unique province: it was involved in investigating the health risks posed to the public by a medical device regulated by the FDA.

In fact, under the Medical Device Reporting System, 21 C.F.R. Part 803, referred to by the FDA counsel in oral argument, manufacturers regulated by the FDA are required to report to the FDA all serious complaints received from users of their medical devices. Indeed, it was conceded at oral argument that the complaint summary was drafted at the specific request of the FDA. Thus, it is clear that defendants cannot support their argument that the complaint summary was not an agency record because it was submitted under the FDA's presubmission review procedure.

The defendants' argument that Dow Corning retained constructive control over the complaint summary is unpersuasive. In *Tax Analysts*, the Supreme Court, in referring to Tax Court decisions in the possession of the Justice Department's Tax Division, ruled it irrelevant that the Tax Court retained authority to modify the decisions and thus retained control over the documents even after the Justice Department obtained them. As the *Tax Analysts* Court explained, the "inquiry focuses on an agency's possession of the requested materials, not on its power to alter the content of the material it receives." *Id.*, at 2849. Defendants similarly miss the point when they argue that under presubmission review, the FDA constrains itself from using exempt documents until given permission to do so by the submitter. If the FDA's possession of the document is a result of the conduct of its legitimate duties, it is irrelevant whether the FDA agrees to return the material after it has been reviewed.[5]

Presubmission review is nothing more than an attempt to get around the FOIA. Insofar as it attempts to shield "agency records" which are not otherwise exempt from disclosure under the FOIA, presubmission review "is incompatible with the FOIA's goal of giving the public access to all non-exempted information received by an agency as it carries out its mandate." *Id.*

---

**5.** It is obvious that once an agency has seen information, even pursuant to the presubmission review process, that information will be "used" by the agency, even if the document itself is returned. It would be preposterous for any government agency to take the position that an agency is capable of—and should—completely ignore information that is returned to the submitter under the presubmission review procedure. This would mean that even if the submitted information disclosed that the public was at risk of significant harm, the agency would be forced to close its eyes to the risk rather than acting on it. It is inconceivable that any agency could treat the public welfare in such a cavalier manner. An agency cannot pretend that it has not seen information, especially information relating to a public danger. A congressional committee would have a field day with an agency that used this "three blind mice" defense when called upon to account for why it did not act upon information in its possession concerning risks to the public health caused by one of the agency's regulatees.

Referring to a Nuclear Regulatory Commission regulation which allowed a submitter to withdraw any non-exempt document before it was released to the public, the court in *General Elec. Co. v. United States Nuclear Regulatory Com.*, 750 F.2d 1394, 1299 (7th Cir.1984) explained that the regulation, if "[r]ead literally, would utterly defeat the application of the Freedom of Information Act." The *General Electric* court upheld the regulation only because it was interpreted as not applying once a FOIA request had been filed. *Id.* The regulation at issue in this case is limited in no way whatsoever; moreover, in light of *Tax Analysts*, it is not the agency's right to determine which records in its possession are not agency records subject to the FOIA. Dow Corning's complaint summary is an agency record subject to disclosure under the FOIA.

■ This Court is troubled by the fact that Dow Corning submitted its complaint summary with the understanding that it was entitled to rely on the confidentiality provisions of the presubmission review regulation. While this Court believes one is entitled to assume a government agency's regulations are valid and to rely on such a presumption in interacting with the agency, one must also realize that it might have to suffer the consequences if a court determines that the regulation is invalid.

The Supreme Court in *Chevron Oil Company v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971) held that in order for a judicial decision to merit nonretroactive application, the decision "must establish a new principle of law, either by overruling clear past precedent.... or by deciding an issue of first impression whose resolution was not clearly foreshadowed." (Citations omitted). The *Tax Analysts* decision, upon which this Court relies in invalidating the FDA's presubmission review, does neither.

It is certainly not a new proposition that it is for a court to decide what is an agency record and whether an agency has appropriately withheld a document pursuant to a

claim of exemption or confidentiality. *See* 5 U.S.C. § 552(a)(4)(B); *Ackerly,* 420 F.2d at 1339–40 n. 3 ("a pledge of confidentiality.... cannot, in and of [itself], override the Act."); *Robles v. Environmental Protection Agency,* 484 F.2d 843, 846 (4th Cir. 1973) ("While, perhaps, a promise of confidentiality is a factor to be considered, it is not enough to defeat the right of disclosure"). Similarly, the *Public Citizen* court held that "Congress has made clear both that the federal courts, and not the administrative agencies, are ultimately responsible for construing the language of the FOIA, and that agencies cannot alter the dictates of the Act by their own express or implied promises of confidentiality." *Public Citizen Health Research Group v. Food & Drug Admin.,* 704 F.2d 1280 at 1287 (1983) (citations omitted).

The *Chevron* Court further held that a Court must determine whether retroactive application will further the purpose of the rule, and whether retroactive application will work an injustice or hardship. *Chevron Oil,* 92 S.Ct. at 355. Given that, in adopting its presubmission review regulations, the FDA was attempting to evade the FOIA for its own purposes and for those of its regulatees, this Court concludes that retroactive application is not only appropriate but necessary. This is especially true in the instant case. Disclosure will not unduly harm Dow Corning since release of the complaint summary will not work competitive injury to Dow Corning, particularly since Dow Corning would ultimately have had to submit all consumer complaints to the FDA without the benefit of a confidentiality promise under the Medical Device Reporting System requirements. Moreover, if silicone breast implants are, in fact, a "killer product," it is urgent that this information be made public immediately. This is precisely one of the reasons for which the FOIA was created.

For these reasons, the complaint summary submitted by Dow Corning will be made subject to disclosure under the FOIA.[6]

---

6. There is no claim that the complaint summary falls under exemption 4 of the FOIA, since FDA

had originally determined that the document

The Court now turns to plaintiff's request for Dow Corning's animal studies.

## Exemption 4

■ The main purpose of the FOIA is "to open agency action to the light of public scrutiny." *United States Dept. of Justice v. Tax Analysts,* 492 U.S. 136, 109 S.Ct. 2841, 2846, 106 L.Ed.2d 112 (1989) (internal quotations omitted). Under the FOIA, agency records must be disclosed when properly requested unless they are specifically exempt under the Act's nine exemptions. The presumption created by the FOIA is for the disclosure rather than the withholding of records. Even when an exemption applies, the agency must release the reasonably segregable non-exempt portions of the documents. *See* 5 U.S.C. § 552(b). The agency bears the burden of proving that an exemption applies, and the Court must make a *de novo* determination that the agency's decision not to disclose was correct. *See* 5 U.S.C. § 552(a)(4)(B).

■ The defendants' objections to disclosure of the animal studies turn on exemption 4 of the FOIA. Exemption 4 protects records from disclosure when those records consist of "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). The animal studies prepared by Dow Corning and submitted to the FDA are certainly commercial, and it is Dow Corning's and the FDA's position that the records are "confidential."

The FOIA contains no definition of the term "confidential." Over the years, the courts have determined that the confidentiality of records is determined by, among other factors, "the legislative purpose which underlies the exemption." *National Parks and Conservation Ass'n v. Morton,* 498 F.2d 765, 767 (D.C.Cir.1974). The D.C. Circuit has held that, in accordance with the legislative purpose, records are to be considered confidential if disclosure is likely either "to impair the Government's ability to obtain necessary information in the future" or "to cause substantial harm to the competitive position of the person from

whom the information was obtained." *Id.,* at 770. Defendants believe that the release of Dow Corning's animal studies meets both of these tests.

The premise of the "impairment argument" put forth by the defendants is the contention that the animal studies were submitted "voluntarily" by Dow Corning under assurances of confidentiality, and that the FDA had no means of compelling production of this information. Defendants further argue that if the FDA were to disclose this material, manufacturers would be reluctant to voluntarily provide information in the future, thereby hampering the agency's job of protecting the public health.

According to defendants, the letter sent by the FDA panel requesting Dow Corning's research data was an "invitation" for a voluntary submission of information. According to the FDA, silicone gel breast implants fall into a category of devices which were commercially marketed before Congress passed the 1976 Medical Device Amendments to the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 360e. These "preamendments devices" must be classified by the FDA according to their risk for human health. Once a preamendments device is classified, the FDA must conduct a second rulemaking in order to require manufacturers to file a premarket approval application ("PMA") designed to demonstrate the safety and effectiveness of the product.

Congress has designated a transitional grace period during which preamendments devices may continue to be commercially marketed without the filing of a PMA application. In other words, pursuant to the Congressional grace period, manufacturers of preamendments devices cannot be required to do or report safety tests on their products in the form of a PMA application until the later of either 30 months after being classified or 90 days after the FDA finally promulgates a PMA regulation.

The FDA has not yet published a final PMA regulation for silicone gel breast implants, despite the fact that they are a Class III preamendments device requiring

could not be shielded under the requirements of

that exemption.

the most stringent regulation. A proposed PMA regulation was finally published on May 17, 1990, however, the earliest date at which manufacturers of silicone breast implants will be obligated to submit a PMA application will be December, 1990.

The FDA argues, therefore, that at this time, Dow Corning and other breast implant manufacturers are under no legal obligation to perform or report the results of safety testing, and that any such submissions are therefore voluntary. It is the FDA's position that there is no way the agency can mandate such testing and reporting for silicone breast implants and for other preamendments devices prior to the issuance of a PMA regulation. Therefore, the FDA contends, insofar as obtaining research concerning preamendments devices is concerned, the agency is completely dependent upon manufacturers voluntarily submitting information. Because of this, defendants argue, voluntary submissions should be shielded as "confidential" information.

To begin with, this Court does not agree with the FDA's assessment of the agency's authority. The FDA would have this Court believe that it is the most impotent agency in Washington, and that the only way it can protect the public's health and welfare is by begging manufacturers of possibly lethal devices to submit information voluntarily. While the FDA may presently rely on so-called voluntary submissions, that is clearly due to the agency's ineptness and to its failure to pursue avenues that are certainly open to it. It is inconceivable that the agency charged by Congress with safeguarding the public health does not have the ability to investigate whether or not the silicone gel breast implant is a "killer product" which should be removed from the market.

In oral argument, counsel for the FDA represented to the Court that while the agency could conduct an investigation and require the submission of information if there were actual evidence that silicone breast implants were harmful, the agency was not empowered to require these submissions in the absence of such proof be-

cause no PMA regulation has been promulgated. This is difficult for the Court to accept, since it would leave the FDA no means of ascertaining whether the product was harmful enough to warrant that type of serious investigation. While Congress may have intended to provide some regulatory relief to preamendments device manufacturers when it decreed a transitional grace period, it certainly did not intend to strip the FDA of its power to investigate potentially lethal products necessary to protect the health of this nation's women.

In fact, Congress specifically empowered the FDA to require the submission of safety test results under § 701(a) of the Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 371(a). Under this provision, the agency is empowered to mandate submissions as part of the premarket approval process. Logically, this means that the agency would certainly be permitted to require research materials as part of its rulemaking procedure regarding the content of PMAs.

The FDA argues that although it is empowered to promulgate a regulation requiring such submissions, this does not change the fact that it has *not* yet promulgated one for silicone breast implants, and that it is therefore dependent upon voluntary submissions given pursuant to a confidentiality agreement. It is noted that Congress gave the FDA the power to promulgate PMA regulations as early as 1976. The agency has done little, if anything, to implement this extremely important and necessary authority for over 13 years. To now use this delay as an excuse for continued ineffective regulation is nothing less than *chutzpah* being elevated to new heights.

 Given that the FDA, by its own admission, has had the ability for more than 13 years to compel such submissions, its impairment claim, based on the fact that it has failed to act, cannot be sustained. It may be true that disclosure of documents submitted voluntarily will impair voluntary cooperation. However, where compelled cooperation will obtain precisely the same results as voluntary cooperation, an impairment claim cannot be countenanced. While

defendants are correct in contending that power to compel does not alone destroy an impairment claim, it does require the agency to show that compelled as opposed to voluntary submissions would "entail *qualitative* impairment of the information contained therein." *Critical Mass Energy Project v. Nuclear Regulatory Com.* 830 F.2d 278, 284 (D.C.Cir.1987). This defendants have not done.

Defendants have argued that companies would be less likely to do safety tests and report these test results if the information was required to be disclosed pursuant to the FOIA. It is absurd to think that a reputable company like Dow Corning would refrain from safety testing, do less testing, or be less likely to report such testing if the FDA actually compelled it to do so. Simply to protect itself from product liability suits, Dow Corning would have to undergo the most complete testing program that its scientists and engineers could devise.

To date, only Dow Corning has done voluntary safety testing of silicone breast implants, but if the FDA were to compel such testing, all manufacturers of this product would be forced to perform these tests. Similarly, if the FDA were to enforce reporting of test results, it, and therefore the public, would be in possession of more, not less information which is crucial to protecting this nation's health and welfare.

Defendants also argue that manufacturers would only perform the required testing and would neither do nor report additional tests to the FDA for fear of FOIA disclosure. This is clearly inconsistent with Dow Corning's representation that it performed voluntary testing in order to enhance its reputation with its customers as a safety conscious company. Whether or not some testing is compelled should not affect a company's effort to build good will and add to its reputation for reliability with the public. Furthermore, it is in Dow Corning's interest to cooperate with the FDA rather than obstruct this important agency in carrying out its critical mission. Certainly, a prudent company will act as

Dow Corning did in reporting its findings of carcinogenicity in rodents to the FDA. This type of extra, voluntary cooperation with the FDA builds a company's reputation as trustworthy both with the public and with the regulating agency.

■ Even if disclosure could possibly deprive the FDA of "some necessary information," the agency must show that " 'the impairment is significant enough to justify withholding the information.' " *Critical Mass*, 830 F.2d at 286 (citing *Washington Post Co. v. U.S. Dep't. of Health & Human Services*, 690 F.2d 252 at 269 (D.C.Cir. 1982)). Defendants have not persuaded this Court either that "(1) cessation of . . . voluntary submission of these reports would in fact deprive the agency of the information contained therein, or (2) that alternative available means for obtaining the . . . reports would entail a significant risk that the value of the submitted reports would decrease." *Id.*

■ Neither have defendants succeeded in persuading this Court that agency efficiency will be impaired through disclosure. The FDA is already required to obtain much of this information, such as the animal studies, during the classification of devices under 21 C.F.R. § 860.1(a). In fact, the agency previously obtained most of the animal studies at issue here through a mandatory submission by Dow Corning as part of the classification of silicone breast implants. The fact that, by 1989, the agency had misplaced this material and therefore asked that it be resubmitted does not make it "dependent" upon voluntary submissions; the agency clearly had and still has an effective means of obtaining this exact information. An impairment of agency efficiency claim will fail where "*existing* regulations encompass a requirement that [the agency's] licensees submit these reports." *Critical Mass*, 830 F.2d at 286–87.

Moreover, Congress has, under § 701(a) of the FDCA, announced a preference for mandatory over voluntary submissions: the FDA *must* eventually promulgate a PMA regulation and thus mandate safety test submissions. Where compelled sub-

mission is clearly the optimal method for regulating the industry, the FDA is hard-pressed to support its claim that voluntary submissions are somehow more efficient.

Accordingly, this Court rejects defendants' impairment claim. It does not appear that the FDA will be in a worse position if it requires compliance with its regulations. In fact, if the FDA compels submission of the materials it needs to do its job, the public will obviously be better protected than it is now. With an effective PMA regulation, all silicone breast implant manufacturers will be compelled to do research and testing which will better protect the public health.

Neither have defendants supported their argument regarding the competitive injury prong of exemption 4. Plaintiff has requested that the FDA disclose those animal studies which yielded "positive" or "inconclusive" results; as for studies yielding "negative" results, plaintiff has requested only the protocols and final results. Moreover, plaintiff has limited his request to exclude information concerning Dow Corning's silicone gel product specifications, marketing strategies, and the names of individuals and independent contractors who participated in the studies.

Defendants contend that the research data constitute trade secrets or confidential commercial information whose disclosure would cause Dow Corning substantial competitive injury. Defendants state that disclosure could potentially work commercial harm on Dow Corning by facilitating its competitors' safety testing. According to defendants, this harm is even more apt to occur given the approaching deadline for the promulgation of a PMA regulation for silicone breast implants. It is defendants' contention that competitors could use Dow Corning's test results, both positive and negative, as a road map to facilitate their own testing, thus taking advantage of the research funds and time expended by Dow Corning.

This Court first notes that disclosure of the positive tests, which demonstrate that a product poses a danger when used in a certain manner, is unquestionably in the public interest. To argue that this type of information is confidential suggests that, in order to protect whatever marginal commercial benefit Dow Corning may get from having independently discovered certain risks, other manufacturers be permitted to blindly put out potentially damaging products. Certainly Dow Corning, as a good citizen, would not risk the public health in this manner. The benefit of releasing this type of information far outstrips the negligible competitive harm that defendants allege.

While it is true that the negative studies are arguably useful to Dow Corning's competitors because they demonstrate the safety of the tested material, it is inconceivable that disclosure of the protocols and results alone will facilitate a competitor's premarket approval application. Pursuant to the FDA's recently drafted PMA regulation for silicone breast implants, a manufacturer must submit not only the protocols and test results, but the raw data supporting those results. *See* 55 Fed.Reg. 20572. In the absence of the raw data, an applicant cannot demonstrate the requisite safety and effectiveness necessary to obtain FDA approval.

At oral argument, the FDA indicated that it was unable to define whether the studies were "negative" or "positive." If the agency is unable to characterize the studies' usefulness in terms of proving the safety or risks of breast implants, it is unlikely that the research will be useful to competitors submitting their own PMA applications. Against this background, it is unclear how Dow·Corning's competitors can use such inconclusive tests to assist them in avoiding the expenditure of time and money on "blind alleys."

This Court also notes that most of the studies at issue here were prepared as much as 20 years ago. It can hardly be claimed that Dow Corning's competitors can use this information to any substantial extent in preparing current PMA applications. It is unlikely that competitors would look in any meaningful way to studies undertaken by Dow Corning over 20 years ago in order to satisfy 1990 testing require-

ments. The FDA admits that protocols have changed substantially in the intervening years and that the documents have not been analyzed for their continued relevance. Defendants have introduced no evidence which would demonstrate the current significance of these tests. Given the explosion of technology in recent years, this Court cannot accept, absent substantiation, that studies from the 1960's and 1970's are the most productive route for Dow Corning's competitors to pursue.

Manufacturers of silicone breast implants will be required to submit PMA applications in the very near future; this was known to all manufacturers ever since silicone breast implants were classified as Class III devices by the FDA. This Court has received no evidence that these manufacturers have failed to do independent testing in anticipation of their product's possible removal from the market. At this late date, only months away from the PMA deadline, the disclosure of the animal studies could not possibly help Dow Corning's competitors unless they have done no research, hoping instead that Dow Corning's research data would be fortuitously released in time to be of use.

Defendants have simply not sustained their claim of substantial competitive injury with specific and direct evidence:

> Conclusory and generalized allegations are indeed unacceptable as a means of sustaining the burden of nondisclosure under the FOIA, since such allegations necessarily elude the beneficial scrutiny of adversary proceedings.... and generally frustrate the fair assertion of rights under the Act.

*National Parks and Conservation Ass'n v. Kleppe,* 547 F.2d 673, 680 (D.C.Cir.1976). Dow Corning has foreclosed this Court from having access to pertinent informa-

tion it could have used to determine the competitive worth of the animal studies.

During discovery, plaintiff learned of two expert witnesses familiar with Dow Corning's animal studies. These individuals were expert witnesses in breast implant product liability suits brought against Dow Corning. These witnesses were profferred by plaintiff on the issue of the value of Dow Corning's animal studies and the carcinogenicity of silicone breast implants. Dow Corning precluded their testimony because of protective orders obtained in product liability suits settled by Dow Corning. What is particularly troubling is that Dow Corning insisted on enforcing these protective orders in order to preclude even an *in camera* proceeding which would have allowed the Court to obtain the benefit of this obviously important testimony. As a result this Court was forced to strike the declaration of Dow Corning's principal witness on basic fairness grounds. Without the testimony of this witness, Dow Corning has not been able to suport its position that disclosure of the studies would cause it competitive harm. The Court cannot accept Dow Corning's contention of competitive harm when it is based on unsupported allegations.[7]

■■■ From the information available to this Court, it seems that any injury which might result would certainly not be substantial enough to mandate shielding the information from disclosure. Furthermore, this Court is not convinced, based on the age and form of the studies, that Dow Corning would necessarily undergo any competitive injury. "Like all FOIA exemptions, exemption 4 is to be read narrowly in light of the dominant disclosure motif expressed in the statute." *Washington Post Co. v. U.S. HHS,* 865 F.2d 320, 324 (D.C. Cir.1989) (citations omitted). Defendants have not proved the applicability of an exemption 4 "competitive injury" claim.[8]

7. What is particularly disturbing to this Court is that Dow Corning has even denied this important information to the FDA. The agency has informed the Court that it has been unable to compel Dow Corning to furnish it with this information. This means that the agency lacks access to significant data which is possibly vital to protecting the public health.

8. Dow Corning also alleges that the research data at issue constitute "trade secrets" which are specifically protected from disclosure under exemption 4. However, this was specifically rejected in *Public Citizen Health Research Group v. Food & Drug Admin.,* 704 F.2d 1280 (D.C.Cir. 1983). The court held that health and safety data submitted to FDA did not constitute the

## Conclusion

It is the decision of this Court that the animal studies and the complaint summary are subject to disclosure and were wrongly withheld by the FDA. Accordingly, summary judgment will be entered for the plaintiff.

type of commercially valuable plan or formula used for making articles or materials which are trade commodities because such data had at best a tangential relationship to the productive

process. *Id.*, at 1286–90. Accordingly, the Court rejects Dow Corning's efforts to construe the animal studies as trade secrets.